UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON JEFFERIES,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant.<br>_____/ | No. C-10-4397 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 15, 18)** |

In August 2007, Plaintiff Carlton Jefferies filed for disability insurance benefits and supplemental security income. Mr. Jefferies has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Currently pending before the Court is Mr. Jefferies's motion for summary judgment as well as the cross-motion for summary judgment filed by Defendant the Commissioner of Social Security. Having considered the parties' briefs, as well as all other evidence of record, the Court hereby **DENIES** Mr. Jefferies's motion and **GRANTS** the Commissioner's.

## I. FACTUAL & PROCEDURAL BACKGROUND

In August 2007, Mr. Jefferies filed for disability insurance benefits and supplemental security income, alleging disability as of January 1, 2003. Mr. Jefferies's applications were initially denied in December 2007, and again on reconsideration in March 2008. Mr. Jefferies then sought an administrative hearing before an administrative law judge ("ALJ"). A hearing was held before an ALJ in July 2009. *See* AR 23-51 (hearing transcript).

1    In December 2009, the ALJ held that Mr. Jefferies was not disabled under the Social
2 Security Act. *See* AR 10-18 (ALJ decision). The ALJ evaluated Mr. Jefferies's claim of disability
3 using the five-step sequential evaluation process for disability required under federal regulations.
4 *See* 20 C.F.R. §§ 404.1520, 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At steps one and two, the ALJ found that Mr. Jefferies had not engaged in substantial gainful activity since January 1, 2003, *i.e.*, the alleged onset date, and that he had the following severe impairments: gout, left shoulder osteoarthritis and impingement syndrome, left hand trigger fingers, and obesity. *See* AR 12 (ALJ decision). At step three, the ALJ determined that none of these impairments, either taken alone or together, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 13. At step four, the ALJ found that Mr. Jefferies had the residual functional capacity ("RFC") to perform light work as defined by the regulations, with some limitations – *i.e.*, "no strenuous or tight gripping with either hand, and no overhead reaching or lifting." AR 14. Based on this RFC, the ALJ stated that Mr. Jefferies was not able to perform his past relevant work, either as an electronics technician or a handyman, both of which required a medium level of exertional activity. *See* AR 16. Finally, at step five, the ALJ concluded that, given Mr. Jefferies's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, including the occupations of gate guard and hand packager. *See* AR 16-17. In reaching this conclusion, the ALJ

2

relied on the testimony of a vocational expert. *See* AR at 17. Accordingly, the ALJ determined that Mr. Jefferies was not disabled for purposes of the Social Security Act, from January 1, 2003, through the date of the ALJ's decision. *See* AR 17.

Thereafter, Mr. Jefferies sought review of the ALJ decision but his request for review was denied by the Appeals Council. This petition ensued.

## II. DISCUSSION

As the Ninth Circuit has explained, a court

> may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A court review[s] the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. . . . [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In the instant case, Mr. Jefferies argues that the ALJ's decision was erroneous because he failed to comply with the requirements of Social Security Ruling ("SSR") 00-4p. Under this rule, "[w]hen a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] testimony and information provided in the DOT [*i.e.*, Dictionary of Occupational Titles]." SSR 00-4p. Moreover, under the rule, "[w]hen there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] testimony to support a determination or decision about whether the claimant is disabled." *Id.* According to Mr. Jefferies, the ALJ failed to comply with SSR 00-4p in two ways: (1) The ALJ never asked the vocational expert, on whose testimony he relied at step five, whether that testimony conflicted with the DOT, and (2) there were in fact conflicts between the vocational expert's testimony and the DOT and the ALJ failed to explain the resolution of those conflicts.

In evaluating Mr. Jefferies' arguments, the Court must take into account that "[Social Security Rulings] reflect the official interpretation of the [Social Security Administration] and [therefore] are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007). In the instant case, the Commissioner has not contended that SSR 00-4p is not consistent with the Social Security Act or its regulations. Accordingly, the Court affords SSR 00-4p deference. Moreover, the Court notes that the Ninth Circuit has expressly held, consistent with SSR 00-4p, that "an ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." *Id.* at 1152.

The Court has reviewed the transcript for the hearing conducted by the ALJ. Based on that review, the Court agrees with Mr. Jefferies that the ALJ did indeed fail to ask the vocational expert whether there was any possible conflict between his testimony and the DOT. The Commissioner does not dispute such. *See* Opp'n at 3 (admitting that "the ALJ did not expressly ask the question required by SSR 00-4p"). The problem for Mr. Jefferies is that, as the Commissioner goes on to argue, this error by the ALJ was harmless. The Ninth Circuit has explained that an ALJ's failure to ask the vocational expert whether there was a conflict and, if so, for a reasonable explanation for the conflict can be harmless, *e.g.*, if there were, in fact, no conflict or "if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19.

In the instant case, Mr. Jefferies contends that there were conflicts between the vocational expert's testimony and the DOT both with respect to the gate guard job and with respect to the hand packager job. Regarding the gate guard position, Mr. Jefferies argues that there was a conflict because the vocational expert testified that Mr. Jefferies was unskilled and that he could perform the job as a gate guard even though the DOT defines the job as a semi-skilled position. *See* Mot. at 6. This argument lacks merit because, contrary to what Mr. Jefferies asserts, the vocational expert never testified that Mr. Jefferies was unskilled and, therefore, there was no conflict.

At the hearing, the ALJ asked the vocational expert about jobs that could be performed by a person with certain limitations. After the vocational expert provided the ALJ with information, both

4

about jobs and their numbers nationally and locally, the ALJ noted: "[Y]ou didn't name any skilled jobs. I assume there are no transferable skills?" The vocational expert responded: "No, Your Honor, not to – not with his background." AR 45 (hearing transcript). Testimony that Mr. Jefferies did not have any transferable skills cannot be equated with testimony that Mr. Jefferies was unskilled. The vocational expert merely said Mr. Jefferies could not perform a "skilled" job. Moreover, as the Commissioner points out, the ALJ never included in his hypothetical to the vocational expert any limitations that would preclude Mr. Jefferies from performing semi-skilled work.

Mr. Jefferies argues still that there was a conflict between the vocational expert's testimony and the DOT with respect to the other job discussed at the hearing, *i.e.*, hand packager. As a preliminary matter, the Court agrees with the Commissioner that the gate guard job alone was sufficient to support the ALJ's finding at step five. But even if the Court were to assume otherwise, Mr. Jefferies would fare no better.

According to Mr. Jefferies, there was a conflict because the DOT classifies the job of hand packager as medium level exertion but the vocational expert testified that one-quarter of the hand packager jobs in the national and local economy could be performed at the light level. *See* Mot. at 6. But as Mr. Jefferies's argument demonstrates, the vocational expert knew about the conflict – in fact, even called out the conflict to the attention of the ALJ. During the hearing, the vocational expert specifically stated that "[t]he *DOT* exertional level [for hand packager] is medium" but "anywhere from 25 percent or more would be at the light level and . . . also fit the [ALJ's] hypothetical of no strenuous or tight gripping bilaterally." AR 45 (hearing transcript). Mr. Jefferies asserts that the conflict was not explained, but the vocational expert's testimony showed the substance of the conflict was explained – that was the reason for the 75% reduction. The Ninth Circuit has noted, "[a] [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony [and] no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Moreover, SSR 00-4p specifically states that "[t]he DOT lists *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p (emphasis added).

Hence, there is no irreconcilable conflict here. In sum, the Court concludes that, although the ALJ erred in not expressly asking the vocational expert about potential conflicts with the DOT, that error was harmless – either because there was no conflict (the gate guard job) or because the vocational expert "provided sufficient support for [his] conclusion so as to justify any potential conflicts" (the hand packager job). *Massachi*, 486 F.3d at 1154 n.19.

### III. CONCLUSION

For the foregoing reasons, the Court denies Mr. Jefferies's motion for summary judgment and grants the Commissioner's cross motion. The Clerk of the Court is directed to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket Nos. 15 and 18.

IT IS SO ORDERED.

Dated: August 2, 2011

_____
EDWARD M. CHEN
United States District Judge